**Salem**

## SUZANNE PORTERFIELD GOODPASTURE (WASHBURN)

v.

## BARRY LYNN GOODPASTURE

No. 1260-87-3

Decided September 6, 1988

Counsel

Arthur E. Smith, for appellant.

James M. Roe, Jr. (Carter, Roe, Emick & Moore, P.C., on brief), for appellee.

Opinion

COLE, J. — Suzanne and Barry Goodpasture were divorced on May 18, 1976. There was one child born to the marriage, Richard, whose custody was awarded to Suzanne. Barry was ordered to pay child support in the amount of $30 per week. This amount was increased to $35 per week on October 16, 1978.

In October of 1981, Suzanne decided to take a job in Louisiana. At that time, she wrote a letter to Barry's attorney relieving Barry of his child support obligation while she and Richard were in Louisiana. Barry stopped paying child support at this time. Neither party petitioned the court to modify its child support order. Suzanne and Richard lived in Louisiana for nearly two years (98 weeks), after which they returned to Roanoke. Barry did not resume child support payments, however, believing that Suzanne had to petition the court to reinstate them. However, Barry made expenditures on Richard's behalf totalling $2,998.

On January 26, 1987, Suzanne moved to hold Barry in contempt for child support arrearages since October, 1981, the date she and Richard left for Louisiana. The court found that the past due child support obligation totalled $9,450 ($35 x 270 weeks). The court then credited Barry for the $2,998 in expenditures he had made on Richard's behalf. The court also credited Barry $3,430 ($35 x 98 weeks), finding that, in writing a letter to Barry's attorney relieving Barry of his child support obligation while she and Richard were in Louisiana, Suzanne waived her right to child support payments during that time. On appeal, Suzanne contends that the trial court's allowance of these credits was error.

## I.

■ Initially, we must determine whether Suzanne is procedurally barred from challenging the trial court's ruling on this appeal because no transcript or written statement of facts was filed.

> If the record on appeal is sufficient in the absence of the transcript to determine the merits of the appellant's allegations, we are free to proceed to hear the case. . . . If, however, the transcript is indispensable to the determination of the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to.

*Turner v. Commonwealth*, 2 Va. App. 96, 99, 341 S.E.2d 400, 402 (1986) (citation omitted). In other words, where the transcript is indispensable to the determination of the issues on appeal, the timely filing of a transcript is jurisdictional. *Barrett v. Barrett*, 1 Va. App. 378, 380, 339 S.E.2d 208, 210 (1986).

Barry contends that the transcript is indispensable to the determination of the issues on appeal; Suzanne contends that the facts necessary to decide this appeal are sufficiently stated in the record, absent a transcript. We must, therefore, decide whether the transcript is necessary to the resolution of the issues presented in this case. Suzanne alleges that the trial court erred in allowing Barry credits for expenditures he made on behalf of Richard and for child support payments while she was in Louisiana. All of the facts necessary to decide these issues are present in the record as it exists before us. The trial court's letter opinion of September 1,

1987, and order of September 4, 1987, sufficiently set forth the facts of the case. In addition, a copy of the letter Suzanne sent to Barry's attorney is contained in the record, as are cancelled checks representing expenditures made on Richard's behalf. Therefore, we deny Barry's motion to dismiss this appeal for failure to file a transcript.

## II.

■ Having disposed of the procedural issue, we now reach the merits of this appeal. Suzanne asserts that, by allowing Barry credit for past due child support payments while she was in Louisiana and credit for expenditures made on Richard's behalf, the trial court retroactively modified a support order as proscribed by statute and numerous Virginia Supreme Court cases. We agree and reverse.

No support order may be retroactively modified. Code § 20-108; *Cofer v. Cofer*, 205 Va. 834, 839, 140 S.E.2d 663, 667 (1965). Past due support installments become vested as they accrue and are thereafter immune from change. *Id.* Parties cannot contractually modify the terms of a support order without the court's approval. *Capell v. Capell*, 164 Va. 45, 52, 178 S.E. 894, 896 (1935). Nor does a party's passive acquiescence in nonpayment of support operate to bar that party from later seeking support arrearages. *Richardson v. Moore*, 217 Va. 422, 423, 229 S.E.2d 864, 866 (1976). Should circumstances change requiring alteration in the amount of support, a party's remedy is to apply to the court for relief. *Newton v. Newton*, 202 Va. 515, 519, 118 S.E.2d 656, 659 (1961).

■ In the present case, the trial court allowed Barry a credit of $3,430 for the period Suzanne and Richard were in Louisiana, finding that, by writing a letter to Barry's attorney relieving Barry of his child support obligation, she waived her right to child support payments during that time. However, just as a party cannot by contract or acquiescence modify the terms of a support order, a party cannot by waiver modify the terms of a support order. And although the trial court found that "equity demanded that [it] give this father some relief," "even a court of equity, in an effort to do equity, cannot disregard the provisions of a lawful decree." *Fearon v. Fearon*, 207 Va. 927, 931, 154 S.E.2d 165, 168 (1967)

(quoting *Bradley v. Fowler*, 30 Wash. 2d 609, 620, 192 P.2d 969, 975 (1948)).

Barry argues that this case falls within the exception to the general rule of nonretroactive modification created in *Acree v. Acree*, 2 Va. App. 151, 342 S.E.2d 68 (1986). However, Barry's reliance on *Acree* is misplaced. Because of the unique facts of that case, this court allowed a father credit for nonconforming child support payments "[w]here . . . the custodial parent has by his or her own volition entered into an agreement to relinquish custody on a permanent basis and has further agreed to the elimination of support payments and such agreement has been fully performed." *Id.* at 157, 342 S.E.2d at 71 (emphasis omitted). To enforce the letter of the decree under such circumstances, held the court, would unjustly enrich the mother. Most importantly, failure to enforce the letter of the decree would not work to the detriment of the child. *Id.* at 158, 342 S.E.2d at 72. Unlike *Acree*, Suzanne did not relinquish custody of Richard. Also, unlike the facts presented in *Acree*, Richard has been deprived of the support ordered by the court since October of 1981 and Barry has not satisfied his support obligation by assuming custody of Richard. Therefore, we find that it was error for the court to allow Barry a credit for accrued support payments while Suzanne and Richard were in Louisiana.

The court also allowed Barry credit for payments made on Richard's behalf other than as specified in the support order. This decision was also clearly erroneous. Payments made directly to a child or on his behalf are considered gifts and are not to be credited against support arrearages. *Fearon*, 207 Va. at 932, 154 S.E.2d at 168. The payor has the obligation to pay the specified amounts according to the terms of a support order and cannot vary these terms to suit his or her convenience. *Newton*, 202 Va. at 519, 118 S.E.2d at 659. To allow a party to make payments other than as specified in the support order would lead to continuous trouble and turmoil. *Fearon*, 207 Va. at 931, 154 S.E.2d at 168. Furthermore, it would substitute the self-determined interests of one or both of the parents over the court-determined best interests of the child.

For the reasons stated, the judgment appealed from is reversed.

*Reversed and remanded.*

Keenan, J., and Moon, J., concurred.